Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 8055 | **DATE** | 3/8/2000 |
| **CASE TITLE** | Wanda Walker vs. Borg Warner Automotive | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: We grant BWA's motion for partial summary judgment (21-1) and deny Walker's motion for partial summary judgment (17-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 0 9 2000 date docketed | |
| | Notified counsel by telephone. | | | 30 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GL | courtroom deputy's initials | | 3/6/2000 date mailed notice GL mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WANDA WALKER )
)
    Plaintiff, )
)
    v. ) No. 98 C 8055
)
BORG-WARNER AUTOMOTIVE )
AUTOMATIC TRANSMISSION SYSTEMS )
CORPORATION, )
)
    Defendant. )
)

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Before us are the parties' cross-motions for summary judgment on Count VII of the plaintiff's seven-count complaint, which alleges that the defendant violated the Illinois Workers' Compensation Act (IWCA) by discharging the plaintiff from her job in retaliation for her pursuit of workers' compensation benefits.

The relevant facts are undisputed. Plaintiff Wanda Walker was employed by defendant Borg-Warner Automotive Automatic Transmission Systems Corporation (BWA) from August 13, 1993 until January 2, 1997. On September 27, 1995, Walker reported a work-related back injury to BWA. She then received medical treatment from BWA's occupational medicine health care providers, was placed on light duty, and received one week's worth of temporary total disability pay under the IWCA. At the request of BWA's insurance carrier handling Walker's workers compensation claim, Walker was examined on October 18, 1996 by a Dr. Lieber, who had examined Walker once before in February 1996. Five days later, Dr. Lieber issued a medical report stating: "I find no objective evidence of any functional impairment of the patient's lower back area that can be related to an injury sustained during her employment in September of 1995. At the

1



present time from an objective standpoint, the patient can return to full employment with no restrictions." However, Walker had gotten a note earlier that month from her own treating physician, Dr. Eilers, limiting her to "permanent sedentary light duty work." Dr. Lieber acknowledged Dr. Eilers' contrasting recommendation, but apparently disagreed with it, saying:

> subjectively the patient is continually complaining of some back and right lower extremity discomfort. It has been recommended by her treating physician that she undergo continued epidural steroid injections for relief of symptomatology. From a symptomatic standpoint, I do not have any problem with this treatment. However, objectively there is no evidence of any abnormality nor do I feel the need for these epidurals are in direct relationship to the injury of September of 1995. The patient has reached maximum medical improvement in association with the injury of September of 1995 and requires no further treatment at the present time or in the future.

Based on Dr. Lieber's report, BWA believed that Walker could return to work with no restrictions. On December 18, 1996, BWA's counsel sent a letter to Walker's counsel notifying Walker that BWA was still holding open a full-duty position for her, and that if she failed to return to work within three days of receiving the letter, she would be suspended and even terminated pursuant to BWA's personnel policies. Walker did not report to work, nor did she call to report her absence. On January 2, 1997, BWA Employment Supervisor Dennis Kitchen sent Walker a letter informing her that she was terminated as of that date, for failing to report to work or report her absence from work for three consecutive days.

What *is* disputed is what happened in between the time of the two medical evaluations and Walker's termination. Walker maintains that she gave Dr. Eilers' note to BWA's Environmental and Safety Manager, Doug Grube, and that Grube sent her home and told her to wait for BWA's Human Resource Department to contact her regarding her next work assignment. The only evidence she cites in support of this assertion is her own affidavit. BWA does not admit this fact, but also does not deny it (claiming that it does not have information sufficient to enable it to admit or deny the allegation), and fails to point to any evidence disproving it. In the end the dispute does



not matter, because the resolution of this question of fact is not material to the legal issue before us, as we explain below.

To prevail on her claim that her discharge was retaliatory, Walker must show a causal connection between her termination and her exercise of her right to pursue workers' compensation. See *Hartlein v. Illinois Power Co.*, 601 N.E. 2d 720, 728 (Ill. 1992). This causation element "calls for more than a sequential connection" between an employee's request for benefits and his or her termination; rather, "[t]he plaintiff must affirmatively show that the discharge was primarily in retaliation for [her] exercise of a protected right." *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir. 1994). The critical issue is BWA's motive or intent, and the company will not be held liable if it had a valid, non-pretextual basis for firing Walker. See *Hartlein*, 601 N.E.2d at 728.

We conclude that Walker has not presented enough admissible evidence from which a reasonable jury could conclude that the motivating factor behind her termination by BWA was her pursuit of benefits under the IWCA. Even taking as true all of the facts as alleged by Walker and drawing all reasonable inferences in her favor, BWA's conduct does not amount to retaliatory discharge under Illinois law. Walker has not pointed to any independent record evidence – beyond her own assertion – that BWA's motive was improper. And the Seventh Circuit has observed repeatedly that "'[s]elf serving affidavits without factual support in the record will not defeat a motion for summary judgment.'" *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999) (quoting *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993)).

Furthermore, BWA had a legitimate reason to terminate Walker. The Hourly Employee Personnel Practices Handbook issued to Walker and other hourly employees at the same BWA facility states that "failure to report absence from work (no call-in) for three consecutive days will result in termination of employment." Walker's failure to comply with this policy gave BWA a valid basis for her discharge, since under Illinois law an employer may fire an employee for excess

3

absenteeism, even if the absenteeism is caused by a compensable injury. *See Hartlein*, 601 N.E. 2d at 728 (citing *Slover v. Brown*, 488 N.E. 2d 1103 (Ill. 1986)). Because BWA has shown that it had reasonable grounds for firing Walker that were unrelated to her claim for workers' compensation benefits, it is entitled to summary judgment unless Walker can prove that this stated reason for her discharge was pretextual. *See Hiatt v. Rockwell Int'l. Corp.*, 26 F.3d 761, 767 (7th Cir. 1994) ("Illinois retaliatory discharge cases brought in federal court may be analyzed using the shifting burdens presented in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Walker fails to demonstrate that BWA's stated cause for her termination was a sham. She admits to having received the handbook, but denies that the policy applies to her, claiming that because of Grube's knowledge of her work restrictions and his instruction that she wait at home to hear of her next work assignment, BWA's offer for her to return to work in a full-duty position was made in bad faith. Walker argues that BWA's disingenuous offer merely set up a pretext (her failure to comply with personnel policies) behind which BWA is now trying to hide its real motivation in firing her: her request for workers' compensation benefits. However, even if we credit as true Walker's assertion that she gave Grube her doctor's note and that he told her to go home and wait for a call from the human resources department, Walker violated company policy when she did not show up for work or call to notify them of her absence after receiving BWA's letter telling her to report to work within three days. The letter may not have been exactly the "call from human resources" for which Walker claims to have been waiting, but it certainly constituted contact from the company regarding her next work assignment, and Walker neglected to respond. If Walker did not think that she could perform the full-duty job being held open for her, she could have called someone at the company to explain her failure to report to work and/or ask for an accommodation, but she did not.

Walker argues that BWA's offer was a hoax because BWA knew that she was physically unable to resume a full-duty position. However, even if true, this issue goes to Walker's ability

4

to perform the essential functions of her job, an inquiry which may be relevant to Walker's pending Americans with Disabilities Act claim, but it is not material to the IWCA claim at issue today. Illinois law does not require employers to retain at-will employees who are medically unable to perform in their assigned posts, nor must they accommodate such employees by reassigning them to other positions instead of firing them. *See Hartlein,* 601 N.E.2d at 728. Rather, "it is only the request for benefits that state law puts off limits as a ground for decision." *Id.* Walker points to no evidence that BWA treated differently other employees who violated the absenteeism policy but had not applied for workers' compensation benefits, and nothing she presents suggests that BWA's intent was retaliatory.

In her briefs, Walker insists that BWA discharged her because it believed that her claim for benefits was exaggerated, relying on the Illinois appellate court case of *Clark v. Owens-Brockway Glass Container,* 697 N.E.2d 743 (Ill. App. 1998). We pause first to observe that in applying Illinois state law, federal courts must follow the interpretation of the Illinois Supreme Court or try to anticipate how that Court would apply the law in a similar case. In doing so, we may consult – but are not bound – by decisions of inferior Illinois appellate courts. *See Kaplan v. Pavalon & Gifford,* 12 F.3d 87, 89 (7th Cir. 1993). Nonetheless, the *Clark* case is distinguishable from this one. While that court stated that "[a]n employer may not discharge an employee on the basis of a dispute about the extent or duration of a compensable injury," *Clark,* 697 N.E.2d at 698, close scrutiny of the facts of that case reveals the inapplicability of its reasoning to Walker's case. In *Clark,* the employer suspected that the employee was "malingering" and collecting benefits to which she was not entitled, so it hired an investigator to monitor her activities. The investigator videotaped the employee mowing her lawn, so the company terminated her for attempting to fraudulently collect benefits. Thus in that case the employee's discharge was "directly and proximately related to her claim for benefits." *Id.* However, the court still recognized that "[a]n

5

employer may discharge an injured employee who has filed a workers' compensation claim as long as the reason is wholly unrelated to the employee's claim for benefits." *Id.*

In this case, there is no direct link between Walker's request for benefits and her termination. True, there is a dispute about the nature and extent of Walker's injury. But whether BWA fired Walker because her failure to show up for work or notify the company of her absence violated its personnel policy or because she physically could not perform the full-duty job they wanted her to do, there is no evidence that she was fired because BWA believed that her claim for benefits was exaggerated and that she was trying to collect money fraudulently. Without any such evidence, the law simply does not allow us to make the leap that Walker asks us to make. Her discharge may have been directly related to her *injury*, but it was not directly related to her *request for benefits*, and that is all that is protected under Illinois law.[1]

For the foregoing reasons, we grant BWA's motion for partial summary judgment and deny Walker's motion for partial summary judgment. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 3/8/2000

---

[1] As another court in this district observed: "It is not unusual to find medical witnesses giving opposite opinions concerning the extent of injury, the need for treatment, and the ability to return to work. It is also not unusual for an employer to link temporary total benefits to its own doctor's opinion." *Keesecker v. H.B. Fuller Co.,* No. 93 C 3671, 1994 WL 247112, at *5 (N.D. Ill. June 3, 1994). But the law says that we only link this dispute over benefits to the termination decision if we can find causation. Walker has not met her burden of demonstrating "more than a sequential connection" between her claim for benefits and her discharge. *Roger,* 21 F.3d at 149.

6